# COURT OF APPEALS
## DECISION
## DATED AND FILED

## October 22, 2019

**Sheila T. Reiff**
**Clerk of Court of Appeals**

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos. 2019AP450**
**2019AP451**
**STATE OF WISCONSIN**

Cir. Ct. Nos. 2016TP246
2016TP247

**IN COURT OF APPEALS**
**DISTRICT I**

---

IN RE THE TERMINATION OF PARENTAL RIGHTS TO J.L.C., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

      PETITIONER-RESPONDENT,

   V.

T. S. W.,

      RESPONDENT-APPELLANT.

---

IN RE THE TERMINATION OF PARENTAL RIGHTS TO J.C., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

      PETITIONER-RESPONDENT,

   V.

T. S. W.,

      RESPONDENT-APPELLANT.

---

APPEALS from orders of the circuit court for Milwaukee County: CHRISTOPHER R. FOLEY, Judge. *Affirmed.*

¶1    DUGAN, J.[1]  T.S.W. appeals the orders terminating her parental rights to two of her children, J.L.C. and J.C., and the orders denying her postdisposition motion for a new trial.[2]  T.S.W. argues that the trial court erred because it did not hold a hearing regarding J.C.'s change of physical placement prior to the jury trial on the grounds phase[3] of the petition for the termination of her parental rights (TPR) to both children and because it denied her postdisposition motion without a hearing.[4]  She also argues that trial counsel was ineffective in (1) failing to object to proceeding with jury trial on the grounds phase of the TPR petition before the trial court conducted a hearing on the motion to change J.C.'s physical placement and (2) failing to request an adjournment of

---

[1]  These appeals are decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2017-18).  All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[2]  The Honorable Christopher R. Foley presided over the TPR proceedings and the postdisposition motions, with the exception of the July 30, 2018 final pretrial when the judge was unavailable.  We refer to Judge Foley as the trial court.

[3]  Wisconsin has a two-part statutory procedure for the involuntary termination of parental rights.  *Steven V. v. Kelley H.*, 2004 WI 47, ¶24, 271 Wis. 2d 1, 678 N.W.2d 856.  In the grounds phase, the petitioner must prove by clear and convincing evidence that at least one of the twelve grounds enumerated in WIS. STAT. § 48.415 exists.  *See* WIS. STAT. § 48.31(1); *Steven V.*, 271 Wis. 2d 1, ¶¶24-25.  In the dispositional phase, the court must decide if it is in the child's best interest that the parent's rights be permanently extinguished.  *See* WIS. STAT. § 48.426(2); *Steven V.*, 271 Wis. 2d 1, ¶27.

[4]  Separate cases were filed for each child and T.S.W. filed a separate notice of appeal in each case.  On August 22, 2019, we issued an order consolidating the appeals.

Although the cases were separate before the trial court, in most instances the parties' papers and court orders in each case were identical, and joint court proceedings were held for the two cases.  For ease of reading, we refer to documents that were filed in the singular, even though actually a particular document was filed in both cases.

the jury trial until T.S.W. was back on her prescribed mental health medication. We disagree and affirm the orders.

## BACKGROUND

¶2     On August 2, 2016, the State filed a petition seeking an order terminating T.S.W. and L.C.'s[5] rights to J.L.C. and J.C. The petition alleged grounds of both continuing need of protection or services (CHIPS) and failure to assume parental responsibility. T.S.W. contested the petition.

¶3     A jury trial on the grounds phase was scheduled for February 27, 2017, but it was adjourned at T.S.W.'s request and rescheduled for June 5, 2017. The State and guardian *ad litem* (GAL) later asked the trial court to adjourn the trial because the case manager was on a leave of absence. The trial court granted the adjournment and then granted an adjournment again on October 9, 2017, because it appeared that a reunification of the children with T.S.W. was likely.

¶4     J.C. was placed with T.S.W. on October 31, 2017, and an order for the trial reunification of J.C. with T.S.W. was filed. J.C.'s trial reunification with T.S.W. became a formal change of placement on February 26, 2018.

¶5     On November 29, 2017, a notice of trial reunification for J.L.C. with T.S.W. was filed. The foster parents objected to the trial reunification as to J.L.C. and the agency ultimately withdrew that request.

---

[5] L.C.'s case was severed from T.S.W.'s case for trial and his parental rights were terminated. This appeal does not involve any issues regarding L.C.

¶6    On April 9, 2018, the State advised the trial court that it still intended to proceed to trial on J.L.C.'s case. Additionally, the petition to terminate T.S.W.'s parental rights to J.C. remained pending. An August 27, 2018 jury trial on the grounds phase was set.

¶7    On July 9, 2018, J.C. was removed from T.S.W.'s care for the third time on an emergency basis because T.S.W. continued to use cocaine which put J.C. in unsafe situations. On July 11 and 12, 2018, the trial court held a hearing on the emergency removal and the trial court ordered an emergency change of physical placement removing J.C. from T.S.W.'s care. T.S.W. objected to the change of placement and the matter was set for a July 30, 2018 hearing. On July 30, 2018, the trial court was not available to hear the motion on the change of placement and the hearing was adjourned to the trial date.

¶8    The jury trial on the grounds phase of the TPR began on August 27, 2018, and concluded on August 29, 2018. The jury returned verdicts finding that J.C. and J.L.C. were children in need of continuing need of protection or services and that T.S.W. failed to assume parental responsibility for both children. The trial court accepted the verdicts and made the requisite finding that T.S.W. was unfit to be a parent. The trial court then addressed the motion for a change of physical placement for J.C. and determined that J.C.'s change of placement back to the foster home was warranted.

¶9    The trial court held a dispositional phase hearing on August 31, 2018, and it issued a written decision on October 4, 2018, terminating T.S.W.'s parental rights to J.L.C. and J.C. Orders for the termination of T.S.W.'s parental rights to each child were filed on October 8, 2018.

4

¶10 T.S.W.'s appellate counsel filed a motion for a new trial on July 8, 2019. The trial court denied the motion in a written decision, without a hearing, on July 24, 2019.

¶11 Additional facts will be included as relevant to the discussion.

## DISCUSSION

**I.     The fact that the trial court did not hold a hearing on the change of J.C.'s physical placement motion prior to the jury trial on the TPR grounds phase did not violate T.S.W.'s due process rights**

¶12 T.S.W. argues that the fact that the trial court did not hold a hearing on the motion for a change of J.C.'s physical placement prior to the jury trial on the grounds phase of the TPR violated her due process rights. She asserts that the plan was for J.C. to be placed with her on a trial reunification and then J.L.C. would join J.C. and T.S.W. on a trial reunification. However, prior to the jury trial, J.C. was removed from T.S.W.'s care on July 9, 2018, and an emergency change of placement hearing was held on July 11 and 12, 2018. The trial court granted a temporary nonsecure physical placement of J.C., but also told T.S.W. that on the July 30, 2018 final pretrial date she would have a hearing on her objection to the change of placement.

¶13 On July 30, 2018, the trial court was unavailable. Instead, another judge adjourned the hearing on the motion until the August 27, 2018 trial date.

¶14 At the start of the jury trial on the grounds phase of the TPR petitions, the trial court addressed the change of placement motion. The GAL and the State suggested that the trial court could consider the motion during their presentation of the evidence on the grounds phase without conducting a separate

hearing on the motion. The trial court then decided to consolidate the motion for change of placement with the jury trial on the grounds phase of the TPR. It further stated that, regardless, it was "certainly going to take into account the testimony that's adduced during the grounds [] phase trial in resolving that issue."

¶15 At the conclusion of the jury trial, the State advised the trial court that it did not have anything further to present regarding the motion for the change of J.C.'s placement that the trial court had not already heard. The GAL stated that the trial court should rely on the evidence introduced during the trial and the evidence that the trial court received during the July 12, 2018 emergency change of placement hearing. Trial counsel objected. The trial court then found that the change of J.C.'s physical placement was warranted.

¶16 Based on those facts, T.S.W. contends that the outcome of the hearing on the change of placement "could have materially impacted the evidence that would have been presented at trial." She argues that "[e]ssentially, had T.S.W. prevailed at the change of placement hearing, the jury would have heard that J.C. was placed in her home and not still residing outside of the parental home. By not holding this hearing before trial, T.S.W. was deprived of potential evidence in her favor." T.S.W. then asserts that "the fundamental fairness of due process would have required the trial court to have held the change of placement hearing before trial. As a result, T.S.W.'s right to due process was violated."

¶17 We are not persuaded. First, T.S.W. does not cite any authority for the proposition nor does she develop the argument. In short, she has done no more than to state the proposition without any elaboration. She has not developed or presented an argument telling us why we should accept her conclusory proposition, and she has not referred us to any legal authority supporting the

statement. We need not address undeveloped arguments. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).

¶18 Moreover, as the trial court noted in its written decision denying T.S.W.'s motion for a new trial, the statutory provision which gives a parent who objects to a change of placement from in home to out of home the right to a hearing does not provide a statutory right to an evidentiary hearing and does not provide a statutory time limit in which a hearing must be held. *See* WIS. STAT. § 48.357(1)(c)2.

¶19 The record reflects that T.S.W. was given her hearing on the motion to change J.C.'s physical placement during the emergency hearing on the motion and during the jury trial. At the hearing on July 12, 2018, the trial court heard evidence on the request for an emergency temporary change of placement. The trial court heard testimony from Kelly Davis, a family case manager with Children's Hospital of Wisconsin Community Services. She described the efforts to reunify T.S.W. with J.C., the treatment services that were offered to T.S.W., and T.S.W.'s relapses with substance abuse that put J.C. in unsafe situations. The trial court heard that J.C. was placed with T.S.W. for a trial reunification on approximately October 31, 2017, until approximately July 9, 2018, when she was removed for an emergency detention. T.S.W. chose not to testify at the hearing.

¶20 During the jury trial, the trial court heard testimony about T.S.W.'s involvement with Child Protective Services beginning with her older children in 2007 and continuing until the jury trial. It also heard about T.S.W.'s extensive substance abuse issues that put J.C. in dangerous situations. T.S.W. does not even attempt to identify any facts that she could have introduced that would have

resulted in the trial court denying the motion to change J.C.'s physical placement, nor does she address the evidence presented by the State.

¶21    At the end of the jury trial when the trial court addressed the motion to change placement, the trial court expressly recognized that T.S.W. wanted it to understand that relapse is part of recovery and stated that it understood that fact. However, it further stated, "[b]ut without a doubt, this ongoing inability to maintain sobriety and engage with a drug that we all know is very, very dangerous in various aspects, you know, the [c]hange of [p]lacement was warranted."

¶22    Based on the foregoing, we conclude that the fact that the trial court did not have a hearing on the motion for the change of J.C.'s physical placement prior to the jury trial on the grounds phase of the TPR did not violate T.S.W.'s due process rights.

## II.    Trial counsel was not ineffective

¶23    T.S.W. contends that trial counsel was ineffective in two ways: (1) by allowing the jury trial to proceed without a prior hearing on the motion for J.C.'s change of placement which removed J.C. from T.S.W.'s home, and (2) by failing to raise the issue of T.S.W. not being on her mental health medications and by failing to request adjournment of the jury trial until T.S.W. was on her medications.  T.S.W. argues, as a result of trial counsel's failure to seek an adjournment, the jury observed her to be angry and irritable when she testified, rather than the clearheaded, less impulsive, very pleasant person that she is when she is on her medications.

¶24    We address each contention in turn.

**A. Trial counsel was not ineffective for failing to object to the jury trial proceeding prior to the hearing on the State's motion to change J.C.'s placement**

¶25    T.S.W. argues that trial counsel was ineffective by "allow[ing] the jury trial to proceed without [first having] a hearing on J.C.'s change of placement which removed J.C. from T.S.W.'s home."  A defendant claiming ineffective assistance of trial counsel must establish both deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Moreover, as explained in *State v. Ziebart*, 2003 WI App 258, ¶14, 268 Wis. 2d 468, 673 N.W.2d 369, "a claim predicated on a failure to challenge a *correct* trial court ruling cannot establish either." *See also  State v. Wheat*, 2002 WI App 153, ¶14, 256 Wis. 2d 270, 647 N.W.2d 441 (stating that "[f]ailure to raise an issue of law is not deficient performance if the legal issue is later determined to be without merit") and *State v. Jackson*, 229 Wis. 2d 328, 344, 600 N.W.2d 39 (Ct. App. 1999) (stating that trial counsel's failure to present a legal challenge is not prejudicial if the defendant "cannot offer any proof" that the challenge would have succeeded).  "Trial counsel's failure to bring a meritless motion does not constitute deficient performance." *See State v. Swinson*, 2003 WI App 45, ¶59, 261 Wis. 2d 633, 660 N.W.2d 12.

¶26    Because we concluded above that the trial court properly consolidated the issue of the change of J.C.'s placement with the jury trial on the grounds phase of the TPR, T.S.W.'s "ineffective-assistance-of-counsel claim must fail." *See State v. Langlois*, 2017 WI App 44, ¶23, 377 Wis. 2d 302, 901 N.W.2d 768.  *See also Ziebart*, 268 Wis. 2d 468, ¶17.

**B. Trial counsel was not ineffective in failing to raise the issue that T.S.W. was not taking her prescribed mental health medication and for not requesting an adjournment of the proceedings until T.S.W. was back on her medication**

¶27 T.S.W. argues that trial counsel was ineffective by failing to raise the issue that T.S.W. was not taking her mental health medication at the time of the jury trial and by failing to request an adjournment of the proceedings until T.S.W. was back on her medication. T.S.W. asserts that at trial, the case manager testified that "when T.S.W. is on her medications she is much more clearheaded, less impulsive, very pleasant and tells the best jokes; when she is not on her medications, she is short, angry and irritable and not an effective parent." T.S.W. then argues that, as a result of trial counsel's failings, the jury observed the "'short, angry and irritable' T.S.W. and not the 'clearheaded, less impulsive, very pleasant' T.S.W."

¶28 As noted above, "[t]rial counsel's failure to bring a meritless motion does not constitute deficient performance." *Swinson*, 261 Wis. 2d 633, ¶59. *See also Jackson*, 229 Wis. 2d at 344 (stating that counsel's failure to present a legal challenge is not prejudicial if the defendant "cannot offer any proof" that the challenge would have succeeded).

¶29 Here, in its written postdisposition motion decision, the trial court stated that trial counsel was not ineffective for failing to make meritless motions. The trial court went on to say,

> No reasonable judge would have adjourned this trial for the reason [postdisposition counsel] argues should have been asserted. The TPR petition, which by statute presumptively should have been litigated in 75 days … had been filed two years before the trial…. Only weeks earlier (July 23, 2018), I had denied a request of [T.S.W.] for new counsel because there was no substantive basis for the request **and**

> **because the request would have resulted in another delay in resolving the litigation in derogation of the rights of the children and the interests of the public in timely resolution of TPR cases.** A request to adjourn would have been clearly meritless without taking into consideration [T.S.W.'s] persistent pattern of engaging and then disengaging in her medication regime with the attendant wild swings in her emotional liability.

¶30    Clearly, the trial court stated that, if trial counsel moved to adjourn the jury trial because T.S.W. was not on her mental health medications, it would have denied the motion. It held that the adjournment would have resulted in another delay in derogation of the rights of the children and the interests of the public in the timely resolution of the TPR cases. Moreover, the trial court considered the fact that T.S.W.'s history showed her pattern of engaging and then disengaging in her medication regime with attendant swings in her emotional lability. Thus, the trial court was not convinced that an adjournment would have resulted in any change in T.S.W.'s condition at a new trial date.[6]

¶31    Because we conclude that, if trial counsel had moved to adjourn the jury trial because T.S.W. was not on her prescribed mental health medications, the motion would not have succeeded because the trial court would have denied the motion, T.S.W.'s "ineffective-assistance-of-counsel claim must fail." *See Langlois*, 377 Wis. 2d 302, ¶23. *See also Ziebart*, 268 Wis. 2d 468, ¶17.

---

[6] T.S.W. does not challenge the trial court's holding that it would have denied any motion to adjourn the trial for those reasons. She only argues that trial counsel was ineffective for failing to move to adjourn the trial.

### III. The trial court properly denied T.S.W.'s postdisposition motion without a hearing

¶32 A defendant is not automatically entitled to an evidentiary hearing on a postdisposition motion. "A hearing on a [postdisposition] motion is required only when the movant states sufficient material facts that, if true, would entitle the defendant to relief." *See State v. Allen*, 2004 WI 106, ¶14, 274 Wis. 2d 568, 682 N.W.2d 433. A trial court may deny a postdisposition motion without a hearing "if the motion does not raise facts sufficient to entitle the movant to relief, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief[.]" *See id.*, ¶9. Whether a motion alleges sufficient facts that, if true, would entitle the defendant to an evidentiary hearing presents a question of law that we review *de novo*. *See State v. Bentley*, 201 Wis. 2d 303, 310, 548 N.W.2d 50 (1996).

¶33 As discussed above, the record conclusively demonstrates that T.S.W. was not entitled to relief on her claim that the trial court violated her due process rights by proceeding to the jury trial on the grounds phase of the TPR without first holding a hearing on the motion to change J.C.'s physical placement or her claim that trial counsel was ineffective. Because she was not entitled to relief on those claims, the trial court had the discretion to deny her an evidentiary hearing.

### CONCLUSION

¶34 For the reasons stated above we affirm the trial court's orders.

*By the Court.*—Orders affirmed.

12

This opinion will not be published. WIS. STAT. RULE 809.23(1)(b)(4).